UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
PRASAD CHALASANI, M.D.,

                    Plaintiff,

       -against-

RICHARD F. DAINES, M.D., *et al.*,

                  Defendants.
-------------------------------------------------------X

REPORT AND
RECOMMENDATION

10 CV 1978 (RRM)(RML)

LEVY, United States Magistrate Judge:

        Defendants move to dismiss the complaint of *pro se* plaintiff Prasad Chalasani,

M.D. ("plaintiff" or "Dr. Chalasani").  By order dated December 20, 2010, the Honorable

Roslynn R. Mauskopf, United States District Judge, referred defendants' motion to me for a

Report and Recommendation.  For the reasons stated below, I respectfully recommend that the

motion be granted.

**BACKGROUND AND FACTS**

        Plaintiff commenced this civil rights action on April 19, 2010.  Plaintiff, a

physician, obtained a license to practice medicine in New York State in January 1972.

(Complaint, dated Apr. 19, 2010 ("Compl."), ¶ 13.)  Plaintiff's complaint arises out of the events

leading up to and following the suspension and ultimate rescission of his medical license.

        On January 2, 2002, the New York State Office of Professional Medical Conduct

("OPMC")[1] notified plaintiff that it was investigating his practice and the medical care and

---

[1] OPMC "investigates allegations of physician misconduct and, in appropriate
circumstances, institutes disciplinary hearings against licensees."  (Defendants' Memorandum of
Law, dated Dec. 20, 2010 ("Defs.' Mem."), at 3.)

treatment that he had provided to two patients ("Patients A and B"). (Id. ¶ 14.) On November

28, 2003, after being interviewed by an OPMC representative but prior to a hearing on charges of

misconduct, plaintiff, represented by counsel, signed a consent agreement (the "Consent Order").

(Id. ¶ 21.) As part of the agreement, he consented to a thirty-six-month probationary term and he

agreed not to contest the charges of negligence. (Affirmation of Ross Firestein, Esq., filed Dec.

2, 2010 ("Firestein Aff."), Ex. 3 at 1.) On February 12, 2004, plaintiff asked OPMC to vacate the

Consent Order because, after viewing x-ray films,[2] reports, and OPMC's expert opinion, "he

found that the allegations [against him] were completely without merit and false." (Compl. ¶

22.) On August 9, 2004, OPMC denied plaintiff's request. (Id. ¶ 23.)

 In March and April 2007, OPMC sent plaintiff two notices of probation

violations.[3] (Firestein Aff., Ex. 8.) At plaintiff's request, a three-day evidentiary hearing on the

charges was held before a panel of the New York State Board for Professional Medical Conduct

("BPMC") (Compl. ¶ 27; Firestein Aff., Ex. 8); however, according to plaintiff, OPMC did not

allow plaintiff to present evidence regarding the charges underlying the Consent Order and

probation. (Compl. ¶ 27.) On October 31, 2007, the hearing committee found, by a

preponderance of the evidence, that plaintiff had violated his probation, and it suspended his

---

 [2] OPMC alleged that plaintiff failed to properly read chest x-rays of Patients A and B.
(Compl. ¶ 15.)

 [3] According to defendants, in these notices, OPMC alleged that plaintiff had violated his
probation by failing to: (1) comply in a timely fashion with OPMC's requests for written
verification of his compliance with the Consent Order; (2) inform OPMC of his practice
locations; (3) have practice insurance coverage; and (4) maintain the required excess medical
malpractice insurance coverage. (Firestein Aff., Ex. 8, App'x.) In addition, OPMC alleged that
plaintiff falsely stated in a hospital reappointment application that his privileges had never been
suspended. (Id.)

medical license for one year.  (Id. ¶ 28; Firestein Aff., Ex. 8.)  Plaintiff appealed the decision to

the Administrative Review Board (the "ARB"), which not only declined to lift the suspension but

revoked plaintiff's license altogether.  (Compl. ¶¶ 28, 29.)   In March 2008, plaintiff wrote two

letters to defendant Richard F. Daines, M.D. ("Daines"), former commissioner of the New York

State Department of Health (the "DOH"), requesting that he set aside the ARB decision.  (Id. ¶

30.)  Dr. Daines did not respond (id.), but defendant Keith W. Servis ("Servis"), director of

OPMC, did, by letter dated May 12, 2008 (id. ¶ 32).  In the letter, Servis informed plaintiff that

"OPMC does not have statutory authority to investigate hospitals."  (Id.)  Plaintiff subsequently

wrote multiple letters to various individuals, including Daines, James Horan (an ARB judge), and

defendant David A. Paterson ("Paterson"), former governor of New York State, asking them to

reinstate his medical license and/or overturn the ARB's decision.  (Id. ¶¶ 41, 42, 44, 46;

Plaintiff's Memorandum of Law, dated Dec. 20, 2010 ("Pl.'s Mem."), Ex. 5.)  All of these

individuals declined the requests.  (Compl. ¶¶ 41, 45, 48; Pl.'s Mem., Ex. 8.)

 Plaintiff also appealed the ARB decision to the New York Supreme Court,

Appellate Division.  However, he failed to timely perfect his petition, and the Appellate Division

denied his motion to extend his time to file and dismissed his petition.  (See Compl. ¶ 43; Letter

dated Sept. 15, 2010 from Prasad Chalasani (Dkt. Entry #18) ("2nd Sept. 15 Ltr."), Ex. 14.)

 In addition, plaintiff requested from different individuals or entities records

regarding the investigation of the medical care provided to Patients A and B.  For example, he

requested these records from Daines (Compl. ¶ 39) and made a Freedom of Information Law

("FOIL") request to the DOH's Record Access office (id. ¶ 49).  On September 8, 2009, Servis

responded to the letter addressed to Daines, and on February 11, 2010, the DOH responded to the

FOIL request.  Both stated that they could not release the records because OPMC's investigatory files are kept confidential pursuant to N.Y. Pub. Health Law § 230(10)(a)(v).  (Id. ¶ 51; Pl.'s Mem., Ex. 3.)

In the present action, plaintiff alleges that defendants Daines, Servis, former DOH Commissioner Antonia Novello, M.D. ("Novello"), and Paterson (collectively, "defendants") denied him due process at various points in the investigatory and disciplinary process, including: (1) when OPMC gave him the Consent Order and then rejected his requests to vacate it; (2) during the probation violation proceedings before the BPMC hearing committee and the ARB; and (3) when it failed to fulfill his FOIL request for records.[4]  He seeks $74 million in compensatory damages, $148 million in punitive damages, and attorney's fees.  He also seeks declaratory and injunctive relief, including reinstatement of his medical license and redaction of the allegations against him from the DOH website.

Defendants move to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6) and (b)(1).  They raise several arguments for why the complaint should be dismissed in full, including Eleventh Amendment immunity, statute of limitations, Younger abstention, and failure to state a claim.

## DISCUSSION

### A. Standard for Motion to Dismiss

---

[4] In submissions to the court subsequent to his complaint, plaintiff appears to raise two additional claims—a stigma-plus due process claim and an equal protection claim.  The court under no obligation to and will not consider these claims, as they are not in the original complaint in any form.  However, it bears noting that in his submissions plaintiff fails to adequately plead either of these claims.  (See Defendants' Reply Memorandum of Law, dated Dec. 20, 2010, at 9–10.)

In considering a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all the facts alleged in the complaint and must liberally construe the complaint in the light most favorable to the plaintiff. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). A complaint should be dismissed only if it fails to set forth sufficient allegations of fact to state a claim for relief that is "plausible on its face." Id. at 1949; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Facts that assert merely conceivable conclusions will not survive a motion to dismiss. See Twombly, 550 U.S. at 570.

### B. Damages Claims

#### 1. Claims Against Daines, Servis, and Paterson

Defendants Daines, Servis, and Paterson first move to dismiss the complaint to the extent that it seeks damages against them in their official capacities, on the ground that the Eleventh Amendment bars such causes of action. Plaintiff explicitly states that he is suing Daines, Servis, and Paterson only in their official capacities (Compl. ¶¶ 4, 6, 7), and "it is well established that a suit seeking money damages from a State official in his official capacity is barred by the Eleventh Amendment." Quartararo v. Catterson, 917 F. Supp. 919, 931 (E.D.N.Y. 1996) (citations and internal punctuation omitted); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citations omitted)). Because the Eleventh Amendment clearly bars damages suits against officials sued in their official capacities, I recommend that plaintiffs'

monetary claims against Daines, Servis, and Paterson be dismissed.

### 2. Claims Against Novello

Plaintiff avers that he is suing Novello in her individual rather than official capacity. (2nd Sept. 15 Ltr. at 1). As a result, the Eleventh Amendment is not an absolute bar to a damages claim against her. However, Novello argues that with respect to any damages claims against her, plaintiff has failed to state a claim upon which relief can be granted because he has failed to sufficiently allege that she was personally involved in the alleged deprivation of his rights. (Defendants' Memorandum of Law, dated Dec. 20, 2010 ("Defs.' Mem."), at 9.)

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)); see also Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254–55 (2d Cir. 2001). "Personal involvement" may be established by evidence of direct participation by the defendant in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003) (citations omitted); see also Johnson, 239 F.3d at 254–55 (citations omitted). "The fact that [a defendant] was in a high position of authority is an insufficient basis for the imposition of personal liability." Al– Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)). "A

complaint based on a violation under Section 1983 that does not allege the personal involvement of a defendant fails [as] a matter of law." Allen v. Mattingly, No. 10 CV 0667, 2011 WL 1261103, at *13 (E.D.N.Y. Mar. 29, 2011) (citing Rosa R. v. Connelly, 889 F.2d 435, 437 (2d Cir. 1989); Alfaro Motors. Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987); Johnson v. Barney, 360 Fed. Appx. 199, 2010 WL 93110, at *1 (2d Cir. Jan. 12, 2010)).

Plaintiff mentions Novello only once in the body of the complaint.[5] He contends that she "instigated allegations against plaintiff and harassed him for several years." (Compl. ¶ 52.) However, he fails in any way to elaborate on how she was involved in "instigating" the allegations or "harassing" plaintiff and he alleges no specific facts to support his monetary claim against Novello. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Twombly, 550 U.S. at 557.

In a letter submitted to the court, plaintiff elaborates slightly upon his claim against Novello. The court is under no obligation to review this submission in conjunction with defendants' motion to dismiss, but it is worth noting that even the facts alleged in the letter are insufficient to render plaintiff's claim plausible under Iqbal. In the letter, plaintiff alleges that Novello "was a direct participant in the decision-making process and execution of her own policies," (2nd Sept. 15 Ltr. ¶ 18(b)), but the only extent to which plaintiff offers more than a

---

[5] In his description of the parties named in the complaint, plaintiff also alleges that Novello was responsible for "the promulgation of certain rules and regulations or lack of them, which are subject of this action." (Compl. ¶ 5.) This allegation is not sufficient to allege personal involvement in the claims raised in this lawsuit.

formulaic recitation of the elements of supervisory liability is by (1) stating that he informed

Novello of what happened to him in a letter and (2) citing DiBlasio v. Novello, 344 F.3d 292 (2d

Cir. 2003), for the proposition that Novello set an example of unlawful conduct.  Both of these

arguments are unpersuasive.  First, the law is clear that allegations that an official ignored a

plaintiff's letter are insufficient to establish liability.  Watson v. McGinnis, 964 F. Supp. 127,

130 (S.D.N.Y. 1997) (citations omitted); see also Rivera v. Goord, 119 F. Supp. 2d 327, 344

(S.D.N.Y. 2000).  Second, plaintiff's reliance on DiBlasio is misplaced.  In that case, Novello

was alleged to have played a significant role in the summary suspension of a physician's license

and to have made assertions regarding the plaintiff's alleged incompetence as a radiologist.

Plaintiff alleges no such personal involvement in his complaint.[6]  Therefore, I recommend that

plaintiff's monetary claim against Novello be dismissed.[7]

C. Claims for Declaratory and Injunctive Relief

Defendants also move to dismiss plaintiff's claims for injunctive and declaratory

relief.  They put forth several arguments for dismissal, including statute of limitations, Younger

abstention, and failure to state a claim.  Plaintiff's claim for such relief alleges two seemingly

distinct due process violations—one related to the Consent Order and the other relating to the

---

[6] Moreover, unlike the present action, which involves the revocation of medical licenses under N.Y. Pub. Health Law § 230(10), DiBlasio involved summary suspensions and revocations of medical licenses under § 230(12).  The two statutes result in "altogether separate and distinguishable proceedings."  Applewhite v. Briber, 506 F.3d 181, 182 (2d Cir. 2007) (explaining that while a board independent of the commissioner of the DOH decides whether to revoke a medical license, the commissioner exercises "virtually unfettered authority" to accept the recommendation of the summary suspension hearing committee).

[7] Novello also argues that she is entitled to qualified immunity.  (Defs.' Mem. at 9 n.4.) Because, as explained above, plaintiff fails to state a cause of action against Novello for damages, it is unnecessary to evaluate Novello's claim of qualified immunity.

probation violation; I will discuss the viability of each in turn.

### 1. Consent Order

Plaintiff contends that although the allegations against him concerning his treatment of Patients A and B were false, he "had no choice" but to agree to the Consent Order (Compl. ¶ 15) because OPMC unjustifiably failed to produce or delayed in producing several documents that he had requested and needed for his defense, including OPMC's surgical export report, x-ray reports, and the transcript of his interview with an OPMC investigator. (Id. ¶¶ 15–21.) Plaintiff also alleges that OPMC denied his request to vacate the Consent Order "without ever reviewing it or investigating the medical care provided or cause of death of [Patients A and B]." (Id. ¶ 23.) Defendants argue that plaintiff's due process claims regarding the Consent Order and motion to vacate are time barred.

Claims brought pursuant to 42 U.S.C. § 1983 are governed by the limitations period for personal injury suits under the laws of the state where the cause of action arises, and the applicable statute of limitations in New York is three years. Owens v. Okure, 488 U.S. 235, 240–41, 251 (1989); see also Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994). In addition, a federal civil rights claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) (citation omitted).

Plaintiff signed the Consent Order on November 14, 2003, and he requested that OPMC vacate it in February 2004 because he had determined that the allegations were "completely without merit and false." (Compl. ¶¶ 21, 22.) Plaintiff clearly had reason to know of his injuries stemming from the Consent Order at the time he made this request—or at the very

least when OPMC denied his motion to vacate. Although plaintiff's motion to vacate was denied on August 9, 2004, well more than three years before plaintiff commenced this action, plaintiff argues that his claims regarding the Consent Order are not time barred because defendants' violation of his due process rights was ongoing. (See Pl.'s Mem ¶ 44.) He also argues that the statute of limitations was tolled because, due to fraud on the part of defendants, he only learned in May 2008 that OPMC never investigated the original charges of negligence. (Letter dated Sept. 15, 2010 from Prasad Chalasani (Dkt. Entry #17) ("1st Sept. 15 Ltr."), ¶ 9; 2nd Sept. 15 Ltr. ¶ 12.) Both of plaintiff's arguments are unpersuasive.

"Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of the violation, even conduct that occurred outside the limitations period." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994) (citations omitted). However, "the mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation. . . . [and] courts of this circuit consistently have looked unfavorably on continuing violation arguments and have applied the theory only under compelling circumstances." Blankman v. County of Nassau, 819 F. Supp. 198, 207 (E.D.N.Y. 1993) (internal citations and punctuation omitted). Plaintiff presents no "compelling circumstances" in this case. The acts that plaintiff alleges as due process violations are the enforcement of the Consent Order and the rejection of his motion to vacate it and there is no reason why he could have not challenged the constitutionality of these actions within three years of the denial of his motion to vacate. Neither his subsequent efforts to obtain the investigatory report nor the proceedings surrounding and following his alleged probation violation constitute a continuing violation. See, e.g. Jaghory v. N.Y. State Dep't of Educ., No. 95 CV 3478, 1996 WL 712668, at

*5 (E.D.N.Y. Dec. 5, 1996) (finding that neither the state's denial of the plaintiff's objections to the denial of a medical license nor the alleged rejection of his subsequent renewal application constituted a continuing violation); see also Yip v. Bd. of Trustees of the State Univ. of N.Y., No. 03-CV-00959C, 2004 WL 2202594, at *5 (W.D.N.Y. Sept. 29, 2004) ("The mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation. Nor is the fact that the plaintiff's ongoing protests, objections, requests for reconsideration, and persistent demands for administrative and judicial review have caused the dispute to linger to the present day." (citation omitted)).

Similarly, equitable tolling is inapplicable. Plaintiff argues that it should apply because OPMC deliberately concealed the fact that it had no statutory authority to conduct an investigation and plaintiff only learned of this fact in May 2008. (2nd Sept. 15 Ltr. ¶ 11; 1st Sept. 15 Ltr. ¶ 8.) Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. See, e.g., Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007). Under New York law, the doctrine of equitable tolling "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Id. at 642 (citations omitted). However, a plaintiff

> may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort. . . . [E]quitable estoppel is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient.

Bisson v. Martin Luther King Jr. Health Clinic, 399 Fed. Appx. 655, 656, 2010 WL 4342234, at *1 (2d Cir. Nov. 3, 2010) (citation and internal punctuation omitted). In addition, due diligence

on the part of the plaintiff in bringing the action in a timely fashion is an essential element of equitable relief. Abbas, 480 F.3d at 642. Here, OMPC's alleged failure to inform plaintiff that it lacked statutory authority to investigate claims of negligence is an element of plaintiff's due process claim, and plaintiff has failed to allege any subsequent fraudulent misrepresentation that was intended to prevent him from filing a timely action. He has also failed to demonstrate due diligence on his part in determining the extent to which OPMC had investigated the underlying negligence claims before agreeing to the Consent Order. As a result, equitable tolling is inapplicable.[8]

Thus, I find that plaintiff's claims regarding the consent order and the denial of his motion to vacate are time barred, and I recommend that they be dismissed.

### 2. Probation Violation Proceedings

Plaintiff also claims that the preponderance of the evidence standard for physician misconduct hearings, as set forth in N.Y. Pub. Health Law § 230(10)(f), is constitutionally inadequate. He makes a facial challenge to the statute, arguing that it violates procedural due process generally, and he also contends that in his BPMC and ARB hearings, defendants improperly applied the statute and, in doing so, revoked his medical license without proper procedural due process.

---

[8] Plaintiff's reliance on Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002), is also misplaced. Gonzalez does not stand for the general proposition that a claim accrues when a plaintiff discovers the factual basis for his cause of action. Instead, in Gonzalez, the court held that under the Federal Tort Claims Act, "a claim accrues when the plaintiff discovers, *or in the exercise of reasonable diligence should have discovered*, the factual basis for the cause of action." Id. (emphasis added) (citations omitted). Not only is the Federal Tort Claims Act inapplicable in this action but plaintiff has not demonstrated that he exercised due diligence to discover that the OPMC did not investigate the underlying negligence claims

a. <u>Facial Challenge to N.Y. Pub. Health Law § 230(10)(f)</u>

Plaintiff argues that the standard of proof in physician misconduct hearings must be "clear and convincing" rather than "preponderance of the evidence." To succeed in a facial challenge of a law, a plaintiff "must establish that no set of circumstances exists under which the Act would be valid." <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987). The standard of proof is a matter of due process and serves "to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." <u>Addington v. Texas</u>, 441 U.S. 418, 423 (1979). Courts typically use three standards of proof, depending on the proceeding: (1) in ordinary civil cases, preponderance of the evidence; (2) in criminal cases, beyond a reasonable doubt; and (3) in intermediate cases, clear and convincing evidence. <u>Id.</u> at 423–24. Plaintiff argues that the standard of proof in a physician misconduct proceeding should be heightened because a doctor has a property interest in his or her medical license and without the license to practice, a physician "is unlikely to be employed in any meaningful way." (2nd Sept. 15 Ltr. ¶ 29(a)(i).) However, he does not cite any federal cases holding unconstitutional the preponderance of the evidence standard in physician misconduct (or analogous) proceedings.

As far as this court is aware, no federal court has addressed this precise issue. However, multiple New York courts have and all have found that the preponderance of the evidence standard comports with due process in such proceedings. <u>See, e.g.</u>, <u>In re Gould v. Bd. of Regents of Univ. of State of N.Y.</u>, 478 N.Y.S.2d 129, 130 (3rd Dep't 1984); <u>Giffone v. De Buono</u>, 693 N.Y.S.2d 691, 694 (3rd Dep't 1999). The highest courts of several other states have rejected the need for a higher standard of proof. <u>See, e.g.</u>, <u>Sherman v. Comm'n on Licensure to Practice the Healing Art</u>, 407 A.2d 595, 601 (D.C. App. 1979); <u>Petition of Grimm</u>, 635 A.2d 456,

-13-

461 (N.H. 1993); In re Polk, 449 A.2d 7, 16–17 (N.J. 1982); N.D. State Bd. of Med. Examiners v. Hu, 726 N.W.2d 216, 230 (N.D. 2007); but see Johnson v. Bd. of Governors of Registered Dentists of State of Okl., 913 P.2d 1339, 1347 (Okl. 1996) ("[C]onstitutional due process requires the standard of proof in disciplinary proceedings against a person holding a professional license to be clear and convincing.").

This court agrees with the majority of courts that have considered the necessary standard of proof in disciplinary proceedings against medical professionals.  In Mathews v. Eldridge, 424 U.S. 319 (1976), and its progeny, the Supreme Court developed a balancing test for analyzing a procedural due process challenge to a standard of proof.  Where a court is deciding the proper standard of proof, it should examine and balance three factors: (1) the nature of the private interest affected by the proceeding; (2) the countervailing governmental interest to be furthered by the proceeding; and (3) the risk of error in the ultimate determination created by the use of the particular burden of proof.  See Santosky v. Kramer, 455 U.S. 745, 754 (1982). Application of this test to physician misconduct proceedings makes clear that the preponderance of the evidence standard is constitutionally sound because in the context of such proceedings it is appropriate for the parties to share the risk of error "in roughly equal fashion."  Addington, 441 U.S. at 423 ("The application of the preponderance of the evidence standard results in the parties sharing the risk of error in 'roughly equal fashion.'").

As far as the private interest is concerned, it is certainly true that, as plaintiff asserts, the revocation of a medical license is a serious matter to the holder of that license.  The loss of a professional license is a loss of a person's livelihood.  In addition, plaintiff's "claim that a medical license represents a property right is not without merit."  Harris v. Mills, 478 F. Supp.

-14-

2d 544, 549 (S.D.N.Y. 2007) (citing Donk v. Miller, 365 F.3d 159, 163 (2d Cir. 2004)); see also Keney v. Derbyshire, 718 F.2d 352, 354 (10th Cir. 1983) (holding that a medical license is a constitutionally protected property right) (citations omitted).  However, the private interest in a medical license is not comparable to the private rights involved in the civil cases in which the Supreme Court has held that a clear and convincing evidence standard is constitutionally required.  In such cases, the proceedings deprived persons of liberty or of fundamental personal rights.  See Santosky, 455 U.S. at 756 ("[T]he Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty' or 'stigma.'" (citing Addington, 441 U.S. at 425 (civil commitment); Woodby v. INS, 385 U.S. 276, 285 (1966) (deportation); Chaunt v. United States, 364 U.S. 350, 353 (1960) (denaturalization); Schneiderman v. United States, 320 U.S. 118, 125, 159 (1943) (denaturalization))).  In contrast, the Supreme Court has held that other individual interests not rising to the level of fundamental rights are not entitled to protection by a standard of proof greater than a preponderance of the evidence.  See, e.g., Vance v. Terrazas, 444 U.S. 252, 266–67 (1980) (holding that the preponderance of the evidence standard is constitutionally adequate for expatriation hearings).  In analyzing a challenge to the standard of proof employed in state disciplinary proceedings for attorneys, this court's Committee on Grievances noted that the plaintiff had mischaracterized his law license as a liberty interest rather than a property interest.  In re Friedman, No. MC-93-0180, 1996 WL 705322, at *6 (E.D.N.Y. Nov. 26, 1996).  The committee also concluded that despite the effect that a sanction would have on the attorney's right to earn a living, application of the preponderance standard did not violate his "constitutional rights or otherwise affect the fairness

of the state proceedings." Id. at *7. The disciplinary hearings at issue in this case are analogous

and thus neither liberty interests nor fundamental rights are implicated in such proceedings.[9]

The next Matthews factor, the government interest to be furthered through the

action, is readily apparent here. "[I]t is beyond dispute that New York's disciplinary proceedings

implicate an important state interest in protecting the health of its citizens by regulating the

practice of medicine within its borders." Selkin v. State Bd. For Prof'l Med. Conduct,

63 F. Supp. 2d 397, 402 (S.D.N.Y. 1999) (citing Doe v. Connecticut, 75 F.3d 81, 85 (2d Cir.

1996); Blake v. Lang, 669 F. Supp. 584, 589 (S.D.N.Y. 1987); Middlesex County Ethics

Comm'n, 457 U.S. at 434 (1982)); see also Goldfarb v. Va. State Bar, 421 U.S. 773, 792 (1975)

("We recognize that the States have a compelling interest in the practice of professions within

their boundaries, and that as part of their power to protect the public health, safety, and other

valid interests they have broad power to establish standards for licensing practitioners and

regulating the practice of professions.").

Moreover, given the structure of the misconduct hearings, the court cannot say

that the preponderance of the evidence standard produces an undue risk of error under the third

Matthews prong. First, the statute provides the physician with an opportunity to defend himself

---

[9] It should also be noted that in addition to the nature of the private interest involved, the extent of the loss or impairment of that interest is relevant to the due process inquiry. Santosky, 455 U.S. at 758. Although physician misconduct proceedings can result in license revocation, as they did here, the regulating statute also allows for other, less weighty, sanctions, such as censure and reprimand, suspension, limitations on a license, monetary fines, public service, and continuing education. N.Y. Pub. Health Law § 230-a. Moreover, even the revocation of a license is not necessarily permanent. A physician whose license has been revoked may apply for reinstatement three years from the date of the revocation. N.Y. Comp. Codes R. & Regs. tit. 8 § 24.7(a)(2).

or herself against the charges.  See N.Y. Pub. Health Law § 230(10)(c) (giving a licensee the right to have counsel present at the hearing, to produce witnesses and evidence on his behalf, to cross-examine witnesses and examine evidence produced against him, and to have subpoenas issued on his behalf to require the production of witnesses and evidence).  Second, as the New Jersey Supreme Court recognized, "the subject matter involved in the disciplinary proceeding is such that the risk of confusion, misunderstanding, and error is at a minimum" because "[t]he issues, the evidence and the standards are thoroughly understood by the parties involved."  Polk, 449 A.2d at 16.

Thus, given both the compelling governmental interest in such proceedings and the safeguards in place, the preponderance of the evidence standard is constitutionally adequate in physician misconduct proceedings.  Accordingly, plaintiff's facial challenge to N.Y. Pub. Health Law § 230(10)(f) fails as a matter of law.

b. As Applied Challenge

Plaintiff next argues that the probation violation proceedings—both before the BPMC hearing committee and the ARB—deprived him of due process.  He alleges several violations of due process, including that OPMC neither revealed nor explained the original negligence charge to either panel or allowed him to do so (Compl. ¶¶ 27), that no qualified surgeon was present during his testimony before the hearing committee (2nd Sept. 15 Ltr. ¶ 6(d)), and that two of the ARB panel members were either biased or lacked "credibility to sit on the Board."  (Compl. ¶ 29.)  Defendants argue that plaintiff's as-applied challenges to the hearings must fail because plaintiff received due process and because Younger abstention applies.

Defendants contend that there can be no procedural due process violation because

plaintiff had available an adequate post-deprivation remedy in the form of a proceeding under N.Y. C.P.L.R. Art. 78. Plaintiff could in fact have initiated an Article 78 proceeding after the BPMC panel suspended his license or after the ARB decided to revoke his license. See N.Y. Pub. Health Law § 230-c(5) ("An order of the administrative review board for professional medical conduct or a determination of a committee in which no review by the administrative review board was requested may be reviewed pursuant to the proceedings under article seventy-eight of the civil practice law and rules."). However, he argues that the availability of the Article 78 proceeding should not foreclose his due process claims because his alleged deprivation of due process occurred in the environment of established state procedures (rather than random acts). (1st Sept. 15 Ltr. ¶ 11 (citing cases).)

Plaintiff is correct that the Supreme Court and the Second Circuit have distinguished between deprivations of liberty or property that occurred as a result of random, unauthorized acts by government officers from those that occurred as a result of established governmental procedures. See Parratt v. Taylor, 451 U.S. 527, 541 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Hellenic Am. Neighborhood v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996). According to these cases, where random, unauthorized acts are involved, a meaningful post-deprivation remedy is always enough to satisfy due process. See Hudson v. Palmer, 468 U.S. 531, 533 (1984); Hellenic Am. Neighborhood, 101 F.3d at 880. On the other hand, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." Hellenic Am. Neighborhood, 101 F.3d at 880 (citing Hudson v. Palmer, 468 U.S. at 532; Logan v. Zimmerman

Brush Co., 455 U.S. 422, 435–36 (1982)).

However, it is unnecessary to determine whether all or a portion of plaintiff's claim is that the deprivation was within the environment of established state procedures because, in any case, "an Article 78 proceeding is an adequate state procedure for protecting the property interest in a professional license." Blake v. Ambach, 691 F. Supp. 651, 655 (S.D.N.Y. 1988); see also Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) (declining to determine into which category plaintiff's alleged due process violation fell because of considerable confusion among the circuits on the issue and the adequacy of state-provided due process in the form of an Article 78 proceeding) (citing Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775, 783–84). In New York State, Article 78 "provides the mechanism for challenging a specific decision of a state administrative agency[,]" Campo v. New York City Employees' Ret. Sys., 843 F.2d 96, 101 (2d Cir. 1988) (citation omitted), and "[i]f the record before the Article 78 court demonstrates a lack of appropriate procedure, the Article 78 court has the authority and seemingly the duty to order the agency to conduct a proper hearing, regardless of the type of substantive claim involved." Id. (citation omitted). "An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims." Locurto, 264 F.3d at 174 (citation omitted)). In addition, a petitioner proceeding under Article 78 may raise claims that the agency adjudicators were biased and prejudged the outcome or that the determination was slanted by adjudicators' refusal to recuse themselves. Id. at 174–75 (citations omitted). There is no doubt that plaintiff had an open avenue for review of all of his constitutional claims via an Article 78 proceeding and "no reason exists to depart from the general presumption that a

-19-

judicial trial represents the epitome of full process." <u>Id.</u> at 175 (citing <u>Campo</u>, 843 F.2d at 100–01, 103). Accordingly, plaintiff's as-applied procedural due process claim fails to state a cause of action,[10] and I recommend that it be dismissed.

### 3. FOIL Requests

Plaintiff also claims a due process violation based on the DOH's failure to release records regarding its investigation of the medical care provided to Patients A and B. Defendants argue that this claim is without merit because individuals do not have a property interest in obtaining FOIL documents. Indeed, "[b]ecause FOIL documents need only be produced after a request and investigation by the state entity, <u>see</u> N.Y. Pub. Off. Law §§ 84–89, individuals making such request[s] do not have anything beyond a mere expectation in such documents, and, thus, do not have an entitlement to requested documents that is protected by the Fourteenth Amendment." <u>Blount v. Brown</u>, No. 10-CV-01548, 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010) (quoting <u>Simpson v. Town of South Hampton</u>, No. 06-CV-6743, 2007 WL 1755749, at *4 (E.D.N.Y. June 15, 2007)). "Thus, without the property interest in the documents required for due process claims, the defendants' failure to provide the requested documents does not amount to a constitutional violation." (<u>Id.</u>) (citation omitted). Accordingly, I recommend that plaintiff's due process claim based on his FOIL request be dismissed.

### CONCLUSION

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss be granted. Any objection to this Report and Recommendation must be filed with the

---

[10] As plaintiff fails to state a cause of action, it is unnecessary to evaluate defendants' claim that <u>Younger</u> applies.

Clerk of the Court, with courtesy copies to Judge Mauskopf and to my chambers, within fourteen (14) days. Failure to file objections within the specified time period waives the right to appeal the district court's order. <u>See</u> 28 U.S.C. § 636(b)(1); <u>see also</u> Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

_____/s/_____

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
June 30, 2011